UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID J. CLARK,

        Plaintiff,

    v.                                           Case No. 06-C-614

BRAD TAGGART, BOB KRIZ, JOHN JONES,
SCOTT ALLEN, and TOM SCHERTZ

        Defendants.

**DECISION AND ORDER**

      Plaintiff David J. Clark, a pro se pretrial detainee, brought this civil rights complaint under 42 U.S.C. § 1983 and the Fourteenth Amendment. Clark, who is the subject of a petition seeking his commitment as a "sexually violent person," *see* Wis. Stat. §§ 980.01 et seq., sued five employees of the Wisconsin Resource Center ("WRC"), in Winnebago County, Wisconsin, where he is presently confined. He claims that the defendants violated his right to substantive due process when, acting under color of state law and within their official capacities, they punished him by placing him in seventy-two hour reassignment status and then ordering one-week loss of dayroom privileges. The case is presently before me on the defendants' motion for summary judgment which, for the reasons that follow, will be granted.

**I. Background**

      Plaintiff David J. Clark ("Clark"), is a Chapter 980 civil pretrial detainee at the WRC. According to his complaint, Clark was being escorted to the barber at WRC on April 27, 2006, by Defendant Brad Taggart, a Psychiatric Care Technician. Mindful that he is not a prisoner

serving a sentence for a crime, Clark insisted that Taggart address him by his first name. Clark claims that he feels "utterly disrespected and uncomfortable" when addressed by his last name. (Compl. ¶ 2.) When Taggart refused to assure Clark that he would not address him by his last name in the future, Clark insisted that, "irrespective of Taggart's [Department of Corrections] training, [he] is not a (DOC) prisoner being punished and therefore has the right to be addressed respectful of his desire by his given name, David." (Compl. ¶ 3.) When Clark continued to argue with Taggart after Taggart told him the conversation was over, Taggart ordered Clark to return to the unit without a haircut. (DPFOF ¶ 11.) The parties dispute whether Clark used vulgarity and was otherwise disrespectful to Taggart. (Taggart Aff. ¶ 10.) However, it is undisputed that when Clark initially refused Taggart's order to return to his cell, Taggart contacted other officers for assistance. (DPFOF ¶ 14, 15.) As a result of this incident, Taggart issued a Behavior Disposition Record ("BDR") to the Clark. (DPFOF ¶ 16.)

Defendant Kriz, an Institution Unit Supervisor, and defendant Jones, a Psychiatric Care Supervisor, then met with Clark regarding the BDR and informed him that he was being placed into 72-hour reassignment status. (DPFOF ¶ 17, 18.) Clark then abruptly left the room stating, "This is punishment. I am a civilian. Forget it." (Pltf.'s Resp. To DPFOF ¶ 19.) Although Jones states in his report that Clark also called him dumb and referred to Kris as "a dumb Pollack," this is also disputed. In any event, as a result of Clark's disruptive attitude and refusal to follow orders, Kriz and Jones issued an additional BDR to Clark. (DPFOF ¶ 20.) At a May 1, 2006 hearing regarding the second BDR, defendants Scott Allen and Tom Schertz, both Psychiatric Care Supervisors, imposed a disposition of a one week loss of dayroom. (DPFOF ¶ 34, 35.)

2

WRC Policy and Procedure 3.4.3-P allows for the seclusion and/or restraint of patients where there is an immediate risk of harm. (DPFOF ¶ 32.) This policy also states that other appropriate sanctions will be imposed as needed to discourage the occurrence of further rule violations. (DPFOF ¶ 33.) 72-hour reassignment is a temporary reassignment with certain unit and activity restrictions pending an investigation into an incident. (DPFOF ¶ 24.) It also allows the staff to maintain a safe environment for the entire Resource Center. (DPFOF ¶ 25.) While in 72-hour reassignment, Clark was still allowed move around his unit freely during dayroom hours. During this time, he also had access to the dayroom where he could interact with other patients and participate in activities. (DPFOF ¶ 24.) Of course, Clark had no access to the dayroom for the one-week period his privileges were withdrawn.

Clark claims that his placement into 72-hour reassignment and his one week loss of dayroom access was punitive in nature, and as such, in violation of his substantive due process rights. He seeks injunctive and declaratory relief, as well as monetary damages. Defendants moved for summary judgment on April 10, 2007, arguing that there is no material issue of fact in dispute.

**II. Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, the defendants in the instant action, have the initial burden of demonstrating that they are entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific

3

facts to support or defend its case. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of a factual dispute does not defeat a summary judgment motion; rather, there must be some genuine issue of material fact in the case for it to survive. *Id.* at 247-48.

The basic premise underlying Clark's claim against the defendants is that because he is a Chapter 980 pretrial detainee, he cannot constitutionally be subjected to punishment. Any limitation of his freedom within the institution or denial of a privilege that is imposed upon him as punishment, he seems to believe, is a violation of his rights under the United States Constitution. The source of this belief is the general principle that the Constitution forbids the State from imposing a punishment for a crime upon those who are detained pending trial and have not yet been adjudged guilty. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). Because individuals held in custody under Chapter 980, whether pre- or post-trial, are not serving a sentence for a crime, Clark argues that the same principle applies. *See Youngberg v. Romero*, 457 U.S. 307, 320 (1982).

But there is a vast difference between punishing an individual for a crime of which he has not been convicted and imposing sanctions for violations of institutional rules. Neither *Bell*, nor *Youngberg,* stands for the broad principle that individuals who are civilly detained may not be punished for violating the rules of the institution in which they are confined. *Bell* explicitly recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." 441 U.S. at 546. The Seventh Circuit has

4

likewise held that Chapter 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). This, of course, includes imposing sanctions upon, or more precisely, "punishing," those who violate the rules of the institution in which they are confined. *See West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003) (noting that "a pretrial detainee may be put in isolation-indeed, may be punished for violating institutional rules, provided that the jailers furnish notice and an opportunity for a hearing"). Otherwise, the guards might just as well hand over the keys to the detainees.

In this case it is undisputed that Clark initially refused to obey Taggart's order that he return to his cell. (DPOF ¶ 14.) It is also undisputed that when told by defendants Kriz and Jones that as a result of his conduct toward Taggart he was being placed in 72-hour reassignment status, Clark became disruptive and refused to go to an empty cell, telling them "This is punishment. I am a civilian. Forget it." (DPOF ¶ 11-12.) BDRs were issued for both violations and hearings were held. After Jones and Kriz initially ordered Clark into 72-hour reassignment status pending a decision on the matter, defendants Allen and Schertz imposed a one week loss of dayroom. On the basis of these facts, I find no violation of Clark's right to due process.

As an initial matter, it is questionable whether the 72 hours in reassignment status and the loss of dayroom privileges for a week even amount to a constitutional deprivation. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that in order to state a claim that prison discipline violates an inmate's right to due process, the inmate must show that the discipline he received " imposes atypical and significant hardship on the inmate in relation to the

5

ordinary incidents of prison life." In *Thielman v. Leean*, 282 F.3d 478, 483-83 (7th Cir. 2002), the Seventh Circuit held that "Sandin's reasoning applies with equal force to persons confined under Chapter 980." In the view of the *Thielman* majority, "Sandin teaches that any person already confined may not nickel and dime his way into a federal claim by citing small, incremental deprivations of physical freedom." *Id.* at 484. Thus, in order for a person detained under Chapter 980 to state a due process claim, he must "identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement." *Id.*

The restrictions imposed on Clark as a result of the 72 hour reassignment status do not implicate a liberty interest protected by the Constitution. The restrictions on unit and off-unit activity for the brief period of time allowed for staff to complete any necessary investigation and determine appropriate action to take do not constitute "atypical and significant hardship" when compared to the loss of freedom commitment by its very nature entails. Reassignment does not involve solitary confinement or isolation. A patient on reassignment status has access to the dayroom where he is free to watch television and interact with others for up to twelve hours a day. Although off-unit activities and recreation are not allowed, patients on 72 reassignment are allowed one 15-minute courtyard break per shift. Patients on reassignment also have access to personal items and library books, although they are not allowed electronics except for fans, clocks and typewriters. (DPFOF ¶¶ 26-27.) While the loss of any privileges to individuals who are confined against their will may seem harsh and unfair, to hold that such minor limitations for so short a time implicate a constitutionally protected liberty interest would involve federal courts in the "day-to-day management of prisons, often squandering judicial resources with little

6

offsetting benefit to anyone." *Thielman*, 282 F.3d at 483 (*quoting Sandin*, 515 U.S. at 482). More importantly, 72 hour reassignment is not intended as punishment. As Judge Crabb observed in relation to the same procedure, "[t]emporary reassignment is not grounded in punitive intent; it is merely a part of the process by which officials at the facility investigate alleged misconduct and determine what steps need to be taken in response." *Robinson v. Fergot*, 2005 WL 300376, *6 (W.D. Wis. 2005).

Although the record is less clear with respect to the restrictions that are entailed in one week loss of dayroom, it is at least questionable whether it amounts to an "atypical and significant hardship in relation to the ordinary incidents of [Clark's] confinement. But even if a liberty interest is at stake, the record reflects that Clark was provided notice and a hearing before the sanction was imposed. Under *Higgs v. Carver*, 286 F.3d at 438, no more is required. Clark was found to have violated the rules of the institution and a reasonable sanction was imposed. Clark's apparent belief that, because he is not currently serving a sentence for a crime, he can show disrespect to staff and violate their orders without suffering any consequences finds no support in logic or the law.

Under current caselaw, Clark's claim also fails because the actions he challenges were ordered by individuals who wear the mantle of "professionals." Three of the four individuals who ordered the change in Clark's status were Psychiatric Care Supervisors; the fourth, Kriz, is a Unit Supervisor. In determining whether the conditions of civil confinement are unconstitutionally punitive in nature, courts have been instructed to defer to the judgment exercised by qualified professionals. *Youngberg*, 457 U.S. at 321. Qualified professionals are persons "competent, whether by education, training, or experience, to make the particular

7

decision at issue." *Id.* at 323 n. 30. These decisions, so long as they are made by such professionals, are "presumptively valid." *Id.* at 323. Qualified professionals are only liable when their decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* The professional judgment standard is intended to incorporate the idea that many day-to-day decisions need to be made by persons without formal training, but who are subject to the supervision of qualified persons. *Id.* at 323 n. 30. Thus, decisions made by those in the positions of the defendants are also analyzed under the professional judgment standard. *Williams v. Nelson*, 398 F.Supp.2d 977, 988-989 (W.D. Wis. 2005); *Robinson v. Fergot*, 2005 WL 300376, *5 (W.D. Wis. 2005). In evaluating these decisions, the court's only role is to make certain that the defendants exercised professional judgment. *Robinson*, at *5. As such, to overcome the presumptive validity of these decisions, the plaintiff must present facts that indicate that the defendants did not base their decisions on professional judgment. *Id.*

The decisions to place Clark into 72-hour reassignment status and deny him dayroom for one week were made by qualified professionals. Because of this, there is a presumption of validity behind this decision. *Youngberg*, 457 U.S. at 323. Clark has failed to rebut this presumption by countering the affidavits submitted by defendants with the opinion of similarly qualified professionals. This is fatal. To successfully challenge the presumptive validity of the decision by the qualified professionals, Clark must show that the decision was such a substantial departure from accepted professional standards that it demonstrates that the person responsible actually did not base the decision on such a judgment. *Youngberg*, 457 U.S. at 323, *West v.*

8

*Schwebke*, 333 F.3d at 749. He has failed to do so. Instead, he claims, without evidentiary support, that the decision to sanction him was the retaliatory effect of his previous lawsuits against the staff. However, Clark did not allege any such retaliation claim in his complaint, and he has not been allowed to proceed on such a claim. *See* Complaint and Order dated August 22, 2006. Therefore, Clark has not offered any evidence to rebut the presumption that the professional judgment of the WRC staff to place him in 72-hour reassignment status and then deny him dayroom for a week was based on anything but the professional judgment of the qualified defendants. His claim therefore fails.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment be **GRANTED**. The clerk shall enter judgment dismissing all of plaintiff's claims with prejudice.

Dated this   5th   day of June, 2007

 s/ William C. Griesbach
William C. Griesbach
United States District Judge